**SAN CARLOS APACHE TRIBE**
**DEPARTMENT OF JUSTICE**
Alexander B. Ritchie, AZ Bar No. 019579
Justine Jimmie, AZ Bar No. 019148
Laurel Herrmann, AZ Bar No. 025623
Jana Sutton, AZ Bar No. 032040
Bernardo M. Velasco, AZ Bar No. 033746
P.O. Box 40
San Carlos, Arizona 85550
Tel. (928) 475-3344
alex.ritchie@scat-nsn.gov
justine.jimmie@scat-nsn.gov
laurel.herrmann@scat-nsn.gov
jana.sutton@scat-nsn.gov
bern.velasco@scat-nsn.gov
*Attorneys for the San Carlos Apache Tribe*

**THE SPARKS LAW FIRM, P.C.**
Joe P. Sparks, AZ Bar No. 002383
7503 First Street
Scottsdale, Arizona 85251
Tel. (480) 949-1339
joesparks@sparkslawaz.com
*Attorney for the San Carlos Apache Tribe*

**TITLA & PARSI, PLLC**
Steve Titla, AZ Bar No. 009325
245 S. Hill Street
P.O. Box 1143
Globe, Arizona 85502
Tel. (928) 812-7714
steve@titlaparsi.com
*Attorney for the San Carlos Apache Tribe (of counsel)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| San Carlos Apache Tribe, a federally recognized Indian tribe,<br><br>*Plaintiff*<br><br>v.<br><br>United States Department of Agriculture, *et al.*,<br><br>*Defendants*<br><br>v.<br><br>Resolution Copper Mining LLC,<br><br>*Intervenor-Defendant* | No. CV-21-00068-PHX-DWL<br><br>(Hon. Dominic W. Lanza)<br><br>**RESPONSE TO FEDERAL DEFENDANTS' MOTION TO STRIKE EXPERT DECLARATIONS** |

1

The Court should deny Federal Defendants' Motion to Strike Expert Declarations submitted by Dr. Steven Emerman and Dr. James Wells (collectively, "Experts"), because their declarations fall within exceptions recognized in the Ninth Circuit. *See San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971 (9th Cir. 2014); *Wash. State Farm Bur. v. Marshall*, 625 F.2d 296 (9th Cir. 1980). Specifically, these Experts' declarations (1) are "necessary to determine 'whether the agency has considered <u>all</u> relevant factors and has explained its decision'"; (2) are "<u>necessary</u> to explain technical terms or complex subject matter"; and (3) supply critical "background information." *Id.* at 992 (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004)) (cleaned up) (emphasis supplied); *Marshall*, 625 F.2d at 305. Moreover, the substance of these declarations and supporting memoranda is not new to Federal Defendants because both summarize the comments that each Expert shared with them before publication of the 2025 FEIS, as reflected in the FEIS itself. Moreover, these declarations show the depth and breadth of Federal Defendants' failure to meet their obligation to complete a final environmental impact statement ("FEIS") that comports with the demands of the Southeastern Arizona Land Exchange and Conservation Act of 2015 ("SALECA"). Accordingly, the Court should deny the Motion and not only consider the Experts' declarations, but also hear their testimony.

I.     **Legal Standard**

In a challenge brought under the Administrative Procedures Act ("APA"), district courts conduct a "plenary review" of the record to determine whether an agency's decision was arbitrary and capricious. *Citizens to Preserve Overton Park, Inc. v. Volpe*,

401 U.S. 402 (1971). In such cases, a plaintiff may supplement the administrative record with evidence (1) showing that the agency has not considered all relevant factors; (2) explaining technical terms or complex subject matter; and (3) providing background information. *See Locke*, 776 F.3d at 992;[1] *Marshall*, 625 F.2d at 305.

In *Locke*, state water districts challenged a biological opinion ("BiOp") prepared by the National Marine Fisheries Service ("Service") under the Endangered Species Act ("ESA") related to certain river and canal systems between California's Central Valley and the Bay Area Delta. 776 F.3d at 982-88. Relying on dozens of extra-record declarations, the district court determined that portions of the BiOp were invalid and vacated them. *Id*. at 990-92.

Reversing the district court for conducting a *de novo* review of the BiOp, the Ninth Circuit recognized there are "several exceptions" to the rule that courts are ordinarily limited to the administrative record. Specifically, "a reviewing court may consider extra-record evidence where admission of that evidence (1) is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) is necessary to determine whether the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Id*. (internal quotation marks removed).

---

[1] *Locke* also permits evidence showing that the agency relied on documents not in the record or bad faith by the agency.

The "relevant factors" exception "permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis," with the caveat that the court should not use such evidence to "judge the wisdom of the agency's action." *Id.* at 993. Clarifying this "fine, but important" distinction, the Ninth Circuit stated that a district court may admit evidence "to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious," but "may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *Id.* "[T]he ultimate question" is "whether the agency's final decision was reasonable and reasonably explained." *Seven County Infrastructure Coalition v. Eagle County*, 145 S. Ct. 1497, 1514 (2025). Read together, *Locke* and *Seven County* require that the district court's task is not to determine whether the agency acted prudently, but whether the agency might act differently with information that it should have considered.

To illustrate the distinction, the Ninth Circuit discussed its opinion in *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581 (9th Cir. 2014), in which the district court admitted multiple declarations from forty experts to augment the administrative record, including those from four court-appointed experts, thereby "opening the administrative record as a forum for the experts to debate the merits of the BiOp." *Id*. Similarly, in *Locke*, the Ninth Circuit determined that the district court erred when it "used several extra-record declarations to question [the agency's] scientific judgments." *Id.*

In *Marshall*, the Secretary of Labor ("Secretary") promulgated rules prohibiting the use of certain pesticides on berry crops and fields worked by ten and eleven-year-old children. 625 F.2d at 298-302. Nevertheless, federal law permitted children to hand harvest short-season crops if growers obtained a waiver from the Secretary upon a finding based on objective data that the "level and type of pesticides and other chemicals used would not have an adverse effect on the [childrens'] health or well-being." *Id*. at 298-99. In April 1979, the Secretary published two final rules that removed the substances Captan and Benomyl from a list of pesticides that did not require waivers and certain growers sued. *Id.* At trial, the district court heard competing expert witness testimony and found the growers' witness more credible. *Id*. at 301.

On appeal, the Ninth Circuit determined that the district court improperly substituted its judgment for the Secretary's and should have reviewed the Secretary's informal rule-making under the APA's arbitrary and capricious standard. *Id*. To do so, the district court was permitted to consider evidence before the Secretary in "the administrative record" and also "background information, explanations of the record, and information needed to determine whether the Secretary considered the relevant factors and sufficiently explicated his decision." *Id*.

> **II.     The Opinions and Testimony of the Tribe's Experts Falls Within the *Locke* and *Marshall* exceptions.**

Here, the Experts' declarations and anticipated testimony do not ask the district court to second guess the Forest Service's scientific judgments or conclusions. Rather, Dr. Emerman's declaration shows that the EIS lacks integrity because industry-standard

5

information was not considered or investigated at all by the Federal Defendants; instead, this information was dismissively ignored.  This includes the failure to prepare a stability analysis, dam breach analysis, and emergency preparedness plan for the Skunk Camp tailings storage facility.  It also includes the failure to consider various causes and consequences of pipeline failure.  Further, Dr. Emerman would provide helpful background information by being able to explain for the Court issues present in both the EIS and his declaration and memorandum.

Moreover, the declarations and anticipated testimony encapsulate and explain the comments that Dr. Emerman made during the EIS process that the Forest Service ignored.  *See* FEIS, R-304-05 (breach analysis and emergency planning); R-306 (TSF and embankment design), R-333-35, 342 (water use and pipelines).

Likewise, Dr. Wells' declaration clearly demonstrates that the 2025 FEIS does not consider relevant information, including factors bearing on acid mine drainage, and details precisely why a supplemental draft EIS was absolutely necessary.  Further, his explanations would provide necessary background information and insight to assist the Court in determining that the Forest Service should have published certain information as part of a supplemental EIS.  Moreover, because Dr. Wells participated in two Project workgroups, his opinions were timely presented to the Forest Service before it published the FEIS.

Furthermore, the facts and circumstances of *Locke* and *Marshall* are distinguishable in three important ways.  First, in *Locke*, the challenged action was a BiOp that reached conclusions about impacts on endangered species.  Fundamentally,

6

this is a scientific judgment or conclusion that plaintiffs urged was incorrect and that they asked the Court to determine was incorrect.  Here, the Tribe does not assert that the selection of the Skunk Camp alternative was incorrect, and it does not ask the Court to select a different alternative.  Instead, the Tribe asserts that the Forest Service failed to consider important, necessary information that likely would lead it to prefer a different alternative or at least insist upon material alterations.

Second, in *Marshall*, the challenged actions related to the Secretary's decision not to issue a waiver under a scheme in which plaintiff-growers were obligated to present objective evidence justifying a waiver.  Here, SALECA places a burden on the Secretary of Agriculture to comprehensively review the environmental and cultural impacts of every aspect of the Resolution Mine Plan of Operations.  Again, the Tribe asserts that the Forest Service failed to consider necessary information and did not meet its burden under the law.

Third, the declarations, memoranda, and any testimony that the Tribe would elicit consist of information that the Forest Service did not consider as well as background information and explanations of the record that would clarify the issues for the Court.

### III. Conclusion

The declarations, memoranda, and anticipated testimony of Dr. Emerman and Dr. Wells are relevant and admissible under *Locke* and *Marshall* to show that the Forest Service did not consider relevant factors in preparing the FEIS, to explain technical terms or complex subject matter, and to provide background information by summarizing their comments and contributions shared with the Forest Service during its EIS process.

Federal Defendants' motion is an attempt to shield Federal Defendants from the "inconvenient truths" that the Tribe's Experts provide. The Court should deny Federal Defendants' Motion, consider the Experts' declarations, and admit the Experts' testimony at the hearing on the Tribe's Motion for Preliminary Injunction.

Respectfully submitted this 4th day of August 2025.

      San Carlos Apache Tribe
      Office of the Attorney General

      By: */s/ Alexander B. Ritchie (with permission)*
      Alexander B. Ritchie
      Justine Jimmie
      Laurel Herrmann
      Jana Sutton
      Bernardo M. Velasco
      *Attorneys for Plaintiff San Carlos Apache Tribe*

      THE SPARKS LAW FIRM. P.C.
      By: */s/ Joe P. Sparks*
      Joe P. Sparks
      *Attorney for Plaintiff San Carlos Apache Tribe*

      TITLA & PARSI, PLLC
      Steve Titla
      *Attorney for Plaintiff San Carlos Apache Tribe (of counsel)*